IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL KEVIN HARRIS,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil Action No. 2:08cv79
Criminal Action No. 2:05cr19
(Judge Maxwell)

## REPORT AND RECOMMENDATION THAT §2255 MOTION BE DENIED

### I. Introduction

On July 18, 2008, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] The Government filed its response on August 20, 2008.[2] Petitioner did not file a reply to the Government's response.

### II. Facts

#### A. Conviction and Sentence

On June 22, 2005, petitioner and five other individuals were named by a federal grand jury in various counts of a 10-count indictment. (Dkt.# 2). On September 13, 2005, petitioner signed a plea agreement, agreeing to plead guilty to Count 3 of the indictment, perjury, for false declarations before a federal grand jury, in violation of Title 18, U.S.C. § 1623, and have the remaining charges against him dismissed.[3] The maximum penalty for the offense being pled to was specified as not

---

[1] Dkt.# 306.

[2] Dkt.# 312.

[3] Petitioner was charged with 3 counts in the 10-count indictment: the perjury count (Count Three), and Counts One and Seven: conspiracy to manufacture and distribute methamphetamine and possession of 72 tablets

1

more than five (5) years imprisonment, a $250,000.00 fine, not more than three (3) years supervised release, and payment of a special mandatory assessment of $100.00. In the plea agreement, the petitioner waived his right to appeal any sentence consistent with Guideline Level 12 or lower, and to collaterally attack his sentence. Specifically, the agreement states:

> 11. The parties realize the Guidelines are now advisory, and not mandatory. Nonetheless, the defendant waives the right to appeal or collaterally attack any sentence, or the manner in which it was determined, on any ground whatever, if the sentence is consistent with Guideline Level 12 or *lower*. This includes any ground set forth 18 [sic] U.S.C. 3752 (Review of Sentence) and 28 U.S.C. 2255 (habeas corpus). The United States makes the same waiver with respect to any sentence consistent with a Guideline Level 12, or *higher*. In the event of an appeal, each party reserves the right to argue in support of the sentence. This waiver is not intended to represent the defendant's estimation of an appropriate or reasonable sentence, and it does not prevent him from arguing for a lesser sentence.

(Dkt.# 118 at 5).

On November 7, 2005, the petitioner, then aged 25, a high school graduate who had completed several post-high school technical courses, entered his plea in open court. (Dkt.# 279 at 4). During the plea hearing, the Assistant U.S. Attorney summarized and/or read aloud in open court each paragraph of the plea agreement, including the paragraph 11 *supra*. The Court then asked petitioner's counsel whether he and petitioner had reviewed the plea agreement before the plea hearing, and counsel stated that they had. (Id. at 14). The Court advised petitioner about his limited appellate relief rights and specifically asked petitioner if he understood the waiver of his appellate relief rights but did not advise or specifically ask petitioner about the waiver of his post-conviction relief rights. (Id. at 14 and 18 -19).

---

containing pseudoephedrine with intent to manufacture methamphetamine. Counts One and Seven were dismissed on motion by the United States on October 30, 2006. (Dkt.# 253).

The Court then asked defense counsel if he felt that his client understood the consequences of guilty plea, including the waiver of his appellate rights, and counsel said "Yes, I do, Your Honor. I think he understands all the aspects of the plea agreement." (Id. at 14). The Court did not specifically ask defense counsel whether petitioner understood the waiver of post-conviction relief rights. (Id. at 14 and 18 - 19).

The Court asked petitioner if he had discussed the Sentencing Guidelines' application to his case, particularly in light of the Supreme Court rulings in Booker and Fanfan, and this interchange was had:

THE DEFENDANT: Yeah. I even read the books at Saint Mary's, got a copy of them there, too.

THE COURT: So you've had very considerable exposure to the whole thing we're talking about?

THE DEFENDANT: Not considerable, but I understand it. (Id. at 16).

The Court asked petitioner if he understood the maximum sentence for the crime to which he was pleading, which had previously been explained to him by the AUSA as no more than five years imprisonment. (Id. at 17, 19, 20) and petitioner said "yeah." (Id. at 17). The Court asked petitioner if he understood that the ultimate sentence he received could be more or less severe than the sentence called for by the Guideline; petitioner indicated that he understood. (Id. at 17 - 18). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the Pre-Sentence Report (PSR) was completed and petitioner said "[y]es." (Id. at 16 and 23 - 24). The Court summarized the rights that petitioner was giving up by pleading guilty. (Id. at 12 - 20) and asked the petitioner if he understood that he was giving up those rights by pleading guilty and the petitioner said "[y]es." (Id. at 20). The petitioner then entered his plea of guilty. The Government presented the testimony of West Virginia State Trooper Chris

3

Shrader to establish the factual basis for the plea. (Id. at 20-22). Petitioner did not contest the factual basis for the plea.

After the factual basis for the plea was presented, the Court asked petitioner if his plea was the result of any threat, coercion or harassment of any kind, and petitioner denied that it was. (Id. at 23). The Court asked petitioner if his plea was the result of any promise or inducement, not contained within the plea agreement, and petitioner denied that it was. (Id.). The Court asked petitioner if his attorneys had done a good job representing him and petitioner responded "[y]es." (Id. at 24). The Court further asked petitioner whether he thought that there was any thing that he thought that his lawyers should have done that had been left undone and petitioner stated "[n]o." (Id. at 24). At the conclusion of the hearing, the Court determined that petitioner had made his plea freely and voluntarily with full understanding of its consequences, and that there was a basis in fact for petitioner's plea to the charges in Count 3. (Id. at 24). Petitioner did not object to the Court's finding.

On October 30, 2006, petitioner appeared before the court for sentencing. Petitioner was found to have a base offense level of 24, for the base offense level for the crime for which petitioner perjured himself, minus six levels. After a two-level reduction for acceptance of responsibility and an additional one-level reduction for timely acceptance of responsibility pursuant to Guideline § 3E1.1, his total offense level was 21. (Dkt.# 271 at 6). With his Criminal History Category of IV, the Court found that the tentative sentence guideline range would be 57 to 71 months imprisonment, followed by two to three years supervised release, a fine range of $7,500 plus costs up to $75,000 and a $100 special assessment. (Id.).

The Court then addressed petitioner's three objections to the Pre-Sentence Report.

Petitioner's first two objections challenged the Probation Officer's application of a cross reference in the Guidelines to from Guideline § 2J1.3, the guideline for perjury convictions, to Guideline §2X3.1, the guideline for an accessory after the fact, because the perjury was committed "in respect to" the underlying offense of the methamphetamine conspiracy, giving petitioner a base offense level of 24 rather than 14. Petitioner's contention was that his perjury offense was not "in respect to" a criminal offense, and that the facts did not support a finding that he was an accessory after the fact to the crime of K.K.H., whose operational methamphetamine lab was the basis for the charges in the indictment. The Court found by a preponderance of evidence that petitioner had perjured himself, and the perjury was in relation to K.K.H's conspiracy to manufacture and distribute methamphetamine, and the cross reference to 2X3.1 applied to the charge against and the guilty plea by K.K.H; and petitioner's first two objections were overruled. (Id. at 6 - 11).

Petitioner's third objection was that the probation officer's determination of his offense level for the underlying offense was K.K.H.'s offense level of 30 was insufficient evidence upon which to conclude the offense level in the instant case. Petitioner argued that in the absence of appropriate determination of the underlying offense level, the basic offense level in the instant matter should be 14. The Court found that: Guideline 2X3.1 provides for a base offense 6 levels lower than the offense level for the underlying offense; under Guideline § 2D1.1(c)(6), K.K.H.'s base offense level was 28, but K.K.H. then had a two-level enhancement for possession of a dangerous weapon; however, since there was insufficient evidence to show whether petitioner knew or reasonably should have known of K.K.H.'s possession of the weapon, the Court declined to apply the two-level enhancement to petitioner's case, giving petitioner a base offense level of 22 instead of 24, thereby granting in part his third objection. (Id. at 11 - 13).

Accordingly, petitioner was found to have a total offense level of 19, which included the three-level reduction for acceptance of responsibility. With his Criminal History Category of IV, the penalty would be: imprisonment between 46 to 57 months; a fine of $6,000 plus costs to $60,000; and the special mandatory assessment of $100. Defense counsel then asked the Court for petitioner's placement near Clarksburg, WV; a recommendation for the B.O.P.'s intensive drug program; no fine beyond the mandatory $100 assessment; and a recommendation that petitioner be given credit for time served since his indictment on the instant charges.[4] Petitioner's counsel asked the Court to find a factual connection between petitioner's state drug felony charges and the present federal charge, permitting the state time served from the time petitioner was first arraigned on the instant federal charges to be applied to the pending federal sentence to be served.

The Government agreed only insofar as recommending that petitioner's time served while actually in federal custody be applied to his time already served, but left it up to the B.O.P. to make the recommendation. (Id. at 18).

The Court then sentenced petitioner to a term of 57 months imprisonment, requesting the B.O.P. to make the appropriate recommendations for time served under the federal sentence as a credit to the sentence in the instant case. (Id. at 19).

## B. Direct Appeal

On November 8, 2006, petitioner filed a Notice of Appeal. (Dkt.# 263). On appeal, petitioner challenged the District Court's finding that his perjury was "in respect to a criminal offense," triggering a cross reference to U.S.S.G. § 2X3.1 as an accessory after the fact, which resulted in a

---

[4] Petitioner was in state custody when arrested on the present charges; he was not actually taken into full federal custody until he was paroled from the state charges in July 2006.

6

harsher sentence. On March 14, 2008, the judgment of the district court was affirmed by the Fourth Circuit in an unpublished opinion. The Fourth Circuit found that the cross reference to § 2X3.1 applied even if petitioner had not actually acted as an accessory, but had only attempted to assist another person to escape punishment for an offense, since perjury "in respect to a criminal offense" was not limited to false statements given in response to a question regarding a specific criminal offense. Rather, its purpose was to treat more severely perjuries that risk an incomplete or inaccurate grand jury investigation. Mandate issued on April 7, 2008. Petitioner did not file a motion for rehearing, nor did he file a petition for writ of certiorari to the United States Supreme Court.

### C. Federal Habeas Corpus

#### Petitioner's Contentions (Dkt.# 306)

**(1)** The District Court breached the plea agreement by sentencing petitioner to an enhancement that was not included in the plea agreement, resulting in a sentence more than double the original Guideline range, changing the Guideline Level from a Level 12 to a Level 19.

**(2)** The District Court breached the plea agreement by permitting petitioner to be sentenced to the maximum end of the Guideline range, after agreeing to recommend the minimum end of the Guideline range in the plea agreement.[5] The Government chose the most severe of the two PSR's rather than the original lower recommendation of Guideline Level 12.

**(3)** Ineffective assistance of counsel (IAC) for failure to object to pertinent facts at sentencing, such as an incorrect PSR enhancement after the plea; the government's breach of the plea agreement; the incorrect determination of a Base Level of 28 used to calculate petitioner's sentence; and by failing to maintain adequate communication with petitioner.

**(4)** IAC for failing to include as issues for appeal discrepancies between the Plea Agreement and the actual sentence imposed, such as the sentence enhancement after the plea; the District Court's breach of the plea agreement; the incorrect calculation of petitioner's Guideline range for sentencing; and by failing to maintain adequate communication with petitioner.

---

[5] Petitioner has confused the Government with the Court here; it was the USA's recommendation that petitioner be sentenced to the lower end of the Guideline range, not the Court's.

## The Government's Response (Dkt.# 312)

**(1)** Although the plea agreement made no mention of the cross-reference to Guideline 2X3.1, it clearly and repeatedly warned petitioner that he might receive any sentence within the statute and that there were no representations as to what the actual sentence would be. Further, petitioner was advised at his plea hearing, prior to entering his plea, that no one could predict what his sentence would be until later, that it might be more or less severe than predicted and that he would still be bound by his plea even if his sentence ended up being greater than anticipated. He pled guilty anyway, and further testified that his plea was not the result of any promise or inducement not contained in the plea agreement.

**(2)** Petitioner's claim that the Government breached the plea agreement is unsupported by the record. The United States made all its promised recommendations, including a recommendation that petitioner be sentenced at the lower end of the Guideline but the Court sentenced him to the higher end of the Guideline.

**(3)** Petitioner's contentions that his counsel failed to object to or appeal the cross-reference to Guideline 2X3.1 are simply untrue; defense counsel both objected and later raised the issue on appeal; the written objections were discussed and ruled on at his sentencing hearing; petitioner's appeal was denied and the District Court's judgment was affirmed.

**(4)** Petitioner cites no particular harm caused by the alleged failure of his attorney to adequately communicate, and his allegation is not supported by the record. At his plea hearing, petitioner testified that he was satisfied with his counsel's representation and that his attorney had not left any thing undone that should have been done on his behalf. Further, petitioner's claims that his attorney failed to include as issues for appeal the discrepancies between the Plea Agreement and the actual sentence received; the sentence enhancement after the plea; the District Court's breach of the plea agreement; and the incorrect calculation of his Guideline range for sentencing are all unsupported by the record.

### III. Analysis

**A.    Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255

requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.     Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in

each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

During the Rule 11 colloquy in the case at hand, the Court advised petitioner about his limited appellate relief rights and specifically asked him if he understood the waiver of his appellate relief rights but did not advise or specifically ask him about the waiver of his post-conviction relief rights. (Dkt.# 279 at 14 and 18 -19). The Court asked defense counsel if he felt that petitioner

understood the consequences of guilty plea, including the waiver of his appellate rights, and defense counsel said "Yes, I do, Your Honor. I think he understands all the aspects of the plea agreement." (Id. at 14). However, the Court did not specifically ask defense counsel whether petitioner understood the waiver of post-conviction relief rights. (Id. at 14 and 18 - 19). This inquiry did not appropriately establish that petitioner knowingly and voluntarily waived his right to appeal, nor did it establish that, under the plea agreement, petitioner knowingly and voluntarily waived his right to seek post-conviction relief by filing a habeas corpus petition under Title 28, U.S.C. § 2255. Therefore, as the preceding review of cases indicate, petitioner did not validly waive his right to file this instant petition and accordingly, it should be given full consideration.

**C.     Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of his issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). See also Herman v. United States, 227 F.2d 332 (4th Cir. 1955). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), *cert. denied,* 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D.

W.Va. June 20, 2006).

Petitioner's Ground One and Two claims that the District Court "breached the plea agreement" by permitting the sentence enhancement under Guideline § 2J1.3's cross reference to Guideline § 2X3.1, and by permitting him to be sentenced at the higher rather than the lower end of the Guideline are issues already raised on appeal, albeit somewhat differently expressed. Petitioner is merely re-crafting an argument already decided by the Fourth Circuit of Appeals in an attempt to receive another complete review of an issue already decided on appeal. This Court cannot and will not disturb a holding of the United States Court of Appeals for the Fourth District. These claims must be denied.

Petitioner's Ground Three IAC claims that counsel failed to object to a post-plea incorrect Pre-Sentence Investigation Report enhancement; failed to object to the Government's breach of the plea agreement; and failed to object to the incorrect determination of a Base Level of 28 used to calculate his sentence, as well as his Ground Four IAC claims against appellate counsel for failing to appeal discrepancies between the plea agreement's prediction of his sentence and the actual sentence imposed, including the post-plea sentence enhancement by the application of Guideline § 2X3.1; the District Court's "breach of the plea agreement;" and the "incorrect" calculation of petitioner's Guideline range for sentencing not only are not true, they are merely a re-framing of the same arguments already raised on appeal. This Court's finding that petitioner's perjury was "in respect to a criminal offense," triggering Guideline § 2J1.3's cross-reference to Guideline § 2X3.1, accessory after the fact, and its concomitantly harsher sentencing penalty range, was affirmed on appeal. In the instant petition, petitioner has tweaked his former argument into a "breach of the plea agreement by the District Court" and ineffective assistance of counsel for permitting it. The issue

is the same, despite petitioner's new labels.

Petitioner signed a plea agreement that clearly stated that the maximum sentence he could receive was five years. Approximately seven weeks later, he entered his plea after each and every paragraph of that plea agreement was read or summarized aloud in open court. He testified that: he and his counsel had reviewed the agreement before he signed it (Dkt.# 279 at 14); he understood that his maximum sentence could be no more than five years; the sentence he received might be different than that estimated by his counsel; and that no one could predict how long his sentence would be until the PSR was completed. (Id. at 17 - 18). Petitioner even advised the Court that he had personally read the Sentencing Guideline books at St. Mary's, where he was incarcerated at the time and that he understood the Sentencing Guidelines' application to his own case, having discussed it with counsel. (Id. at 16). The sentence petitioner actually received was fifty-seven months, three months less than the maximum possible sentence and still within the tentative sentence guideline range found *before* the application of Guideline § 2X3.1 that he so vociferously complains of. The Fourth Circuit has already held that petitioner's sentence was properly calculated by the application of the cross-reference to U.S.S.G. § 2X3.1 and it will not be re-addressed here. These claims must be denied.

### D. Whether Counsel's Performance was Ineffective for Failing to Maintain Adequate Communication

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show

that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner's remaining IAC claims generally contend that both his trial and appellate counsel failed to maintain adequate communication with him by neglecting to keep him informed of "any/all" events regarding his case and by failing to "answer phone or mailed correspondence." He provides no examples of instances of how, where or when this happened, nor does he explain how these alleged failures by counsel harmed him.

Not only are these allegations unsupported by the record, which reveals careful, close

assistance of counsel both before and after the plea, timely motions filed and vigorously argued on petitioner's behalf, timely objections filed on his behalf and argued at sentencing, at least one of which to a partially successful conclusion,[6] and a timely appeal[7] filed with the Fourth Circuit, but petitioner himself testified at his plea hearing that his attorney had adequately represented him, and that his attorney had left nothing undone. (Dkt.#279 at 24). Petitioner was represented by two different attorneys during the proceedings; his original attorney withdrew after the plea hearing to take another position elsewhere. Petitioner has not alleged even one instance where either counsel displayed a lack of attention to his representation.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125, 1131 n.8 (4th Cir. 1992), *cert. denied*, 507 U.S. 923 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). Allegations amounting to nothing more than conclusions provide no basis for an evidentiary hearing. Here, petitioner's claims are nothing more than conclusory allegations which provide no specifics to form a basis for the Court to grant an evidentiary hearing. Petitioner has neither shown that his attorneys made any error at all, let alone that counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment. He has not shown that he was prejudiced in any way by counsels' alleged failure to communicate, nor has he alleged that but for counsels' errors, he would not have

---

[6] Petitioner's third objection to the PSR was granted in part.

[7] Appellate counsel's brief to the Fourth Circuit Court of Appeals addressed the very issue petitioner claims that appellate counsel failed to raise on his behalf: this Court's finding that his perjury was "in respect to a criminal offense," triggering Guideline § 2J1.3's cross-reference to Guideline § 2X3.1, accessory after the fact, and its harsher penalty. In this petition, petitioner re-frames it as a breach of the plea agreement by the District Court and ineffective assistance of counsel for permitting it.

pled guilty and would have insisted on going to trial. These claims also fail.

## IV. **Recommendation**

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

November 5, 2009

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE